## Tetlow's Estate

*Samuel H. High* and *Maurice W. Sloan*, for accountant.
*Larzelere & Wright*, for claimant.

HOLLAND, P. J., April 19, 1934.—Dr. W. J. Rouse, a graduate physician, duly licensed to practice medicine and surgery in the Commonwealth of Pennsylvania, claims the amount of $9,695, as shown by the itemized statement offered in evidence.

The claim was clearly proven in every detail from the books of original entry, a complete copy of which is also in evidence. In fact, there was practically no denial that the services for which the claim is made were actually furnished upon the request of the decedent. The evidence also clearly shows, and the fact was not seriously disputed, that the services rendered were entirely satisfactory to the decedent and that she chose the line of treatment prescribed by the claimant after having made exhaustive investigations as to all other methods of treatment for cancer of the uterus, the disease with which she was afflicted. The sole question for the court to decide concerning this claim is whether it is reasonable or excessive according to and as measured by the rules governing physicians' and surgeons' fees. Evidence was adduced by claimant to show that the charges were reasonable and fair, and evidence was adduced by the estate to show that the charges were excessive.

To determine the proper amount due this claimant we cannot do better than

apply the rules laid down in Richter's Estate, 11 D. & C. 485. As to the first rule, there can be no doubt that the claimant gave the best service he was capable of. During some periods of the treatment he was in almost daily attendance, and with two exceptions hardly missed a week without calling upon her for treatments. At all times he was at her call and service, and was most faithful, giving her case every attention possible. She had every confidence in him, and he spared no effort to do all in his power, first, in an attempt to cure her, or at least to secure her comfort and prolong her life as long as possible in her fight against an incurable disease.

As to the second rule, the service he rendered met the usual standards,' in view of the degree of development that science had attained at the time and during the period he rendered the service. There were two operations performed by him. The other services consisted of medical treatment. As to the development of the science in its treatment and practice, it must be admitted that up to the time of the rendering of the service, and, for that matter, up to the present time, there is no known cure for cancer. All treatments of the disease are still in the experimental stage, and it cannot be said that his method was any less successful than any other known method. There was some evidence by witnesses to the effect that he had accomplished cures in their particular cases. Two physicians testified that it was a recognized method of treatment that he employed, and one physician testified that it was not a good method or equal to some other methods employed. There was a difference of professional opinion on this point. However, again it must be noted that this was the method that the decedent chose after investigating all other known methods of treatment.

As to the standing of the claimant in the profession, the testimony is clear that he has a reputation of being a cancer specialist. For years he has done nothing else but treat cancer and study its manifestations. Again, in view of the fact that there is no known cure for cancer, and it appearing that he has had about as much success as other known specialists, we see no reason why we should not regard him as in equal standing with other cancer specialists within this jurisdiction and its vicinity. As to the degree of difficulty of the service, there is little denial or controversy. The evidence was at great length to show the unusual size and abnormal anatomy of the decedent, which rendered unusually difficult an operation already difficult even under favorable conditions. According to the witnesses who were nurses and who assisted the claimant, he even found it necessary to have special instruments made for the operation. Dr. Rae Shepard Dorsett, called by the estate, admitted that the operations and treatments were not without difficulty. The quantity of the service consisted of two operations, and, as indicated by the books of original entry of the claimant, many visits and treatments from August 7, 1930, to the death of the decedent, June 24, 1931. As to the amount others of the same standing in the profession would charge for the same service, under similar circumstances, we have the testimony of two physicians in favor of the claimant to the effect that the charges made were reasonable and such as are usually charged for the services rendered. Dr. Rae Shepard Dorsett testified on behalf of the estate upon this point. He stated: "Well, it required many attendants and many nurses. She was a very heavy woman. The difficulties of this operation have not been magnified. I have examined Mrs. Tetlow, and I know the difficulty of working upon her. If he had charged $600 or thereabouts, he would have charged what an ordinary surgeon of the City of Philadelphia with the highest reputation would have charged me, as a general practitioner, had I sent him a patient for the same work." And then again: "If I had sent this particular

patient (you asked me about Doctor Bland), had I sent this patient to Doctor Bland at the Jefferson Hospital for the same kind of work, I feel morally certain Doctor Bland's charge would have been $500 or $600; at the outside $700. That is the average for a woman in her circumstances." It should be noted in this connection that Doctor Dorsett was informed, in a question directed to him, that Mrs. Tetlow, the decedent, was a woman estimated to be worth a half a million dollars at that time. According to the estate's witness, therefore, the maximum amount that those of the highest standing in the profession in the neighborhood of Philadelphia would have charged for this same service would have been $700.

The question of what a patient in his lifetime should pay, or, if the claim is against an estate, what relative or proportionate amount an estate of that particular size should pay, is probably the most difficult of the rules to apply. The appraisement for the purpose of transfer inheritance tax in this estate indicated that the estate of the decedent at the time of her death aggregated personal property of the approximate value of $204,456.89, and real estate valued at $265,750, or a total of $570,206.89. Generally speaking, the estimated value of the estate would be approximately $500,000. As above indicated, Doctor Dorsett was of the opinion that $700 for each of the operations would be a maximum charge, other considerations being equal. Dr. Howard S. Anders and Dr. W. A. Weaver, testifying for the claimant, were of the opinion that the respective charges of $5,000 and $2,500 for the respective operations were fair and reasonable. We are of the opinion, however, that upon the face of the case both these charges are excessive, even in view of the size of the estate, and of the fact that we are assuming the claimant to be at the head of his profession, and having fully met all the other rules as above laid down.

At this juncture, we should make it clear that we regard all the other charges, exclusive of the charges for the two operations, as perfectly reasonable and justified under all the circumstances, and in consideration of all the aforementioned rules, and need only consider the question of the reasonableness of the fees for the two operations.

As to the treatments, exclusive of the operations, the evidence shows that the claimant had to travel a long distance from his hospital to the home of the decedent, that he expended large proportions of his day on each of these visits, and that at practically all of them he performed difficult and tedious work in dressing, packing, and otherwise physically taking care of the affected parts of the decedent. For these services he charged substantial sums for each visit, but we regard them as reasonable under the circumstances. For other calls which he made, when he simply consulted with the decedent, he made smaller charges. Again we repeat that under all the circumstances, and it was not seriously disputed, all these charges were fair and reasonable and will be allowed as stated, except the fees for the two respective operations.

The remaining question to decide therefore is what relative or proportionate amount an estate of approximately $500,000 should pay for each of these two operations. In the first place, from the statement of the claimant and from all the evidence, we see no reason why a distinction should be made between these two operations. They seem to have been equally serious, complicated, and difficult, and we have been throughout the hearing of the case at a loss to see why the claimant charged twice as much for one as the other. We see no reason why an equal charge should not have been made for each of them. We so hold, and will award the same sum for each of the operations when that sum is determined. Again, it must be observed that the testimony of the expert witnesses express an opinion ranging from $700 to the amount claimed by the claimant.

The opinions of experts as to the value of the services need not be implicitly followed. While opinions of this character may aid, they can not control in considering the claim: Walton's Estate, 16 Phila. 367. Of course, it must be understood that a court can only estimate approximately the value of services on a quantum meruit such as we are considering here. A proper and just figure must be set, and when arrived at it is rather analogous to the verdict of a jury, after considering all the evidence. It is somewhat in the nature of an appraisement, which is a matter of opinion, and of course, in a judicial proceeding such as this, the opinion of the court is controlling. We are of the opinion that the amount $700 testified to by Doctor Dorsett is insufficient and that the figures of $5,000 and $2,500 testified to by Doctor Anders and Doctor Weaver are both excessive. Under all the circumstances and in consideration of the size of the estate, it would seem to us that a figure somewhere between $700 and $2,500 would be just and proper. Under all the circumstances and considering the application of the rules in Richter's Estate, supra, and considering that the estate aggregates approximately a half million dollars, we are of the opinion that $1,500 for each of the operations would be fair and reasonable, and that amount is allowed for each of the operations. The remainder of the claim is allowed as stated. This reduces the claim by $4,500, which, deducted from the amount as stated, $9,695, leaves the full amount of the claim allowed $5,195. The claim of Dr. W. J. Rouse is allowed in the sum of $5,195.

The account is confirmed.

And now, April 19, 1934, this adjudication is confirmed nisi. If no exceptions are filed within 10 days from this date the adjudication is confirmed absolutely according to rule, and counsel for the accountant will forthwith prepare schedule of distribution, certify that the same is correct and in conformity with this adjudication, which, when approved by the court, will be attached to and form part of the same; and Daniel Houseman, administrator d. b. n. as aforesaid, will pay the distributions herein awarded.

NOTE.—No exceptions were filed to the foregoing adjudication.

From Aaron S. Swartz, Jr., Norristown, Pa.